**Larry Edwin WARDINGLEY, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–73–157.**

Court of Criminal Appeals of Oklahoma.

July 30, 1973.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Larry Edwin Wardingley, hereinafter referred to as defendant, was charged and tried in the District Court of Oklahoma County, Case No. CRF–72–2822, for the offense of Murder, and convicted by jury for the lesser offense of Manslaughter in the First Degree. His punishment was fixed at forty-five (45) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Detective Forney, of the Midwest City Police Department, testified that he investigated the death of Robbi Jiminez and on November 24, 1972, interrogated the defendant. Prior to the interrogation he advised the defendant of his Miranda rights and ascertained that the defendant understood his rights. Defendant stated that the child fell from the couch to the floor. He interrogated the defendant a day or two later wherein the defendant stated "he was in the bathroom cleaning up the, I believe, sister of the victim, when he heard the victim crying in the living room. He went in there and it had messed its diapers and he said he became enraged because he had just cleaned it, or something

to the effect. He became angry with it, he picked it up by the rib cage and shook it. He then held it above his head and let it drop from over his head into the crib. He said there was a hard plastic duck toy in the bottom of the crib and the child's head hit this object. He said it cried, and quite severely there for a few minutes, at which time it began to gasp for breath. At this time he got scared and he picked the child up and took it to a neighbor's, who, in turn called the ambulance and police department." (Tr. 7)

Dr. A. J. Chapman testified that he was Chief Medical Examiner for the State of Oklahoma and on November 24, 1972, performed an autopsy upon Robbi Ray Jiminez, a white female four months old. He found numerous contusions and abrasions about the head and upper body. In his opinion death resulted from traumatic head injury caused by a "heavy blow."

Frank Brady testified that he was a polygraph examiner for the Oklahoma State Crime Bureau and on November 27, 1972, interviewed defendant. He advised defendant of his constitutional rights and the defendant acknowledged that he understood them and agreed to talk to him. Defendant first stated that he was babysitting the children and left Robbi on the divan while bathing another child. When he returned to the living room, he found Robbi laying on the floor near the heating element. Approximately fifteen minutes later defendant stated that this story was not true and that he had made it up. The defendant stated that "he was in the bathroom in the process of bathing and changing the older child, at which time little Robbi began crying in the baby crib. He left the older child and went into the room where the baby was crying and noticed that little Robbi had also dirtied her pants. He said she was also crying and he became upset over the fact that the child had dirtied her pants and was crying and screaming, at which time he reached down into the crib and grabbed the child, picked it up, shook it several times, called it a brat

and threw it into the crib, striking the child's head on the side of the crib or a rubber—hard rubber toy that was inside the baby crib. He said that he jerked the child upon two occasions and threw it back into the crib, striking its head either on the side of the crib or the hard rubber toy inside the crib." (Tr. 22)

Detective Ernest Light, of the Midwest City Police Department, testified that he investigated the scene and observed the baby bed, the couch and the heating vent. He talked to the defendant at the hospital and defendant stated that the baby had fallen from the divan.

The defendant testified that he was living in the trailer with the baby's mother and two other adults. The other adults went downtown to try to sell blood and he remained at the trailer babysitting. He testified that "I was watching the kids, and normally when I watch the kids, I bathe them and feed them. So I took Tracy Karen Jiminez, the daughter, into the bathroom and ran some bath water and put her in the tub. I bathed her and as I was drying her off, I started walking back into the living room and Robbi was kind of moaning and groaning and kind of giggling, really. I put Tracy down and when I put her down, she messed all over the bed and I said a few words to her and called her a little brat, and picked her up and I shook her, but not in the sense of shaking the daylights out of her. I just picked her up and shook her and I dropped her into the crib." (Tr. 29–30)

Defendant further testified that he got scared and made up the story that she had fallen off of the divan. He had no intention to kill the child.

■ The sole proposition asserts that the sentence is excessive. We have consistently held that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and this Court does not have the power to modify the same unless we can consciously say that under all the facts and circumstances the sentence is so excessive as to the shock the conscience of the Court. Roberts v. State, Okl.Cr., 473 P.2d 264.

■ From the foregoing statement of facts we cannot consciously say that the sentence imposed shocks the conscience of this Court. To the contrary, we are of the opinion that one who affects the death of a helpless infant should be severely punished. The judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.